897 A.2d 353

GEBROE–HAMMER ASSOCIATES, INC., PLAINTIFF–RESPON-
DENT, v. DAVID SEBBAG, DEFENDANT–APPELLANT, AND
THE FIRST BANK AND TRUST COMPANY OF ILLINOIS, DE-
FENDANT.

Superior Court of New Jersey
Appellate Division

Argued April 4, 2006—Decided May 8, 2006.

Before Judges COLLESTER, LISA and S.L. REISNER.

*Regina L. Gelzer* argued the cause for appellant (*Gelzer Edelson*, attorneys; *Ms. Gelzer*, of counsel and on the brief).

*Marcy A. Gilroy* argued the cause for respondent (*Budd Larner*, attorneys; *Ms. Gilroy*, on the brief).

The opinion of the court was delivered by

S.L. REISNER, J.A.D.

Defendant, David Sebbag, appeals from a final judgment entered upon a jury verdict in favor of plaintiff, Gebroe–Hammer Associates, for $122,500 in brokerage commissions, plus interest, for services in connection with Sebbag's purchase of a promissory note. Raising a novel issue, Sebbag contends that the Statute of Frauds applies to agreements to pay mortgage broker commissions. We disagree and affirm.

I

This is what happened. First Bank & Trust Company of Illinois held a mortgage on an apartment building located at 555 Elizabeth Avenue in Newark, New Jersey. In 2001, First Bank decided to sell the note and mortgage after the property owner defaulted. Sebbag, a real estate investor, heard about the possible sale from a friend and then contacted his attorney, Tom Cohn, to see if Cohn had any information about the property.

Around the same time, David Oropeza, a real estate broker who worked for Gebroe–Hammer, heard that the owner of the Elizabeth Avenue property was in financial difficulty, and he investigated to determine the identity of the mortgagee. He eventually determined that the mortgagee was First Bank. Oropeza spoke with Philip Edison, a bank employee, and offered Gebroe–Hammer's services in selling the note. He attempted to get an exclusive right to sell the property, but the bank did not agree and told Oropeza he "would have to get paid by the buyer." Thus,

Oropeza began discussing the property with clients to see if he could find a buyer for the note.

After speaking with Sebbag, Cohn thought Gebroe–Hammer might have information about the property, and he contacted a friend, Ken Uranowitz, also an employee of Gebroe–Hammer. Uranowitz asked another colleague, David Jarvis, to get involved because he was an "expert" in property in the Newark area. During a telephone conversation among Sebbag, Cohn, Uranowitz, and Jarvis, Sebbag indicated he wanted to retain Gebroe–Hammer to help him with the purchase. Sebbag testified that he wanted exclusivity so Gebroe–Hammer would not try to sell the note to anyone else, but Gebroe–Hammer's representatives refused.

During a later conversation between Oropeza, Uranowitz and Sebbag, the brokers informed Sebbag that the buyer would be paying the commission and they negotiated a rate of 3.5 percent. Oropeza and Uranowitz testified that Sebbag agreed to pay the 3.5 percent commission. According to Oropeza and Uranowitz, Sebbag never mentioned exclusivity.

Uranowitz faxed a proposed letter agreement to Sebbag; the letter stated it was "to confirm our understanding that I agree to pay to Gebroe–Hammer Associates a brokerage commission of [t]hree and one-half ... percent of the gross purchase price of the captioned Note in cash at closing."

According to Oropeza's testimony, Sebbag orally agreed to this arrangement, but he never signed the agreement. Oropeza testified that Sebbag never explicitly refused to sign the agreement; he simply never signed and returned it to Gebroe–Hammer. According to Sebbag, he told Gebroe–Hammer's representatives that he would only sign if they gave him an exclusive agreement.

Sebbag eventually purchased the note and mortgage by contacting the bank directly. When Sebbag refused to pay its commission, Gebroe–Hammer sued Sebbag and First Bank. After settling with First Bank, plaintiff proceeded to trial against Sebbag. The jury returned a verdict finding that there was a contract

between Gebroe–Hammer and Sebbag, that plaintiff had not breached its fiduciary duty to Sebbag, and that plaintiff was entitled to damages of $122,500.

## II

Defendant raises the following issues on appeal:

POINT I: THE TRIAL COURT ERRED IN FINDING THAT THE CONTRACT DID NOT NEED TO BE IN WRITING.

POINT II: THE JURY RULED INCONSISTENTLY IN FINDING THAT THERE WAS NO BREACH OF FIDUCIARY DUTY.

POINT III: THE COURT ERRED IN FAILING TO INSTRUCT THE JURY THAT IF THEY FOUND A CONTRACT THEY MUST ALSO FIND THAT PLAINTIFF HAD A FIDUCIARY DUTY TO DEFENDANT.

We conclude that defendant's contentions in Points II and III are without merit and do not warrant discussion in a written opinion, *R.* 2:11–3(e)(1)(E), beyond the following comments. Defendant's point II argues in essence that the verdict was against the weight of the evidence, an argument he waived when he failed to file a motion for a new trial. *R.* 2:10–1. Defendant did not object to the jury charge on fiduciary duty, thus waiving his right to appeal the charge on grounds other than plain error. *R.* 1:7–2. We find no plain error. The charge was eminently correct and properly tailored to the facts of the case.

Plaintiff contends we should not address the statute of frauds issue, because defendant did not raise the issue before the trial court. First Bank raised the issue in a motion before Judge O'Brien; while defendant's counsel was present at the motion argument, defendant did not file any papers joining in the motion. But once Judge O'Brien rejected the Bank's statute of frauds argument, all parties behaved as though defendant had raised the issue and treated the ruling as the law of the case. In fact during the charge conference before Judge Oles, who sua sponte raised the statute of frauds issue, attorneys for plaintiff and defendant both represented that the issue had been raised and decided. Defendant's counsel indicated "[w]e've already had this argument with Judge O'Brien." And his adversary commented "[w]e had

that fight quite some time ago." Under those circumstances we cannot accept plaintiff's argument that defendant lacks "standing" to raise the issue on appeal.[1] Accordingly, we address the issue on its merits.

■ The parties' arguments center on two sections of the Statute of Frauds that address real estate brokers' commissions. The first section provides that a broker who acts as agent "for the transfer of an interest in real estate" is not entitled to a commission without a written agreement. This section excludes sales of mortgages:

> [e]xcept as provided in subsection d. of this section, a real estate broker who acts as agent or broker on behalf of a principal for the transfer of an interest in real estate, including lease interests for less than three years, is entitled to a commission only if before or after the transfer the authority of the broker is given or recognized in a writing signed by the principal or the principal's authorized agent, and the writing states either the amount or the rate of commission. *For the purposes of this subsection, the interest of a mortgagee or lienor is not an interest in real estate.*
>
> [*N.J.S.A.* 25:1–16(b); emphasis added.]

Subsection d of the statute provides an exception, allowing oral agreements under certain limited circumstances:

> A broker who acts pursuant to an oral agreement is entitled to a commission only if:

---

[1] We find plaintiff's reliance on *Fasching v. Kallinger,* 211 *N.J.Super.* 26, 45, 510 *A.2d* 694 (App.Div.1986), *certif. denied,* 114 *N.J.* 505, 555 *A.2d* 623 (1989), to be misplaced. *Fasching,* a lawsuit against murderer Joseph Kallinger and the author and publisher of a book about his crimes, was decided on a motion for leave to appeal an interlocutory trial court ruling. In declining to address Kallinger's appellate arguments, we held that he was not aggrieved, because he had not joined in the author's and publisher's summary judgment motion below, and hence suffered no adverse judgment when the motion was denied. *Id.* at 45, 510 *A.2d* 694. Of course, the case had not gone to final judgment, and our comments were directed to the interlocutory denial of a summary judgment motion. By contrast, the losing party in a finally decided case is plainly "aggrieved" and has standing to appeal, although ordinarily we will not address on appeal issues not raised by the appellant below. *See Ellison v. Evergreen Cemetery,* 266 *N.J.Super.* 74, 78, 628 *A.2d* 793 (App.Div.1993); *Nieder v. Royal Indem. Ins. Co.,* 62 *N.J.* 229, 234, 300 *A.2d* 142 (1973).

(1) within five days after making the oral agreement and before the transfer or sale, the broker serves the principal with a written notice which states that its terms are those of the prior oral agreement including the rate or amount of commission to be paid; and

(2) before the principal serves the broker with a written rejection of the oral agreement, the broker either effects the transfer or sale, or, in good faith, enters negotiations with a prospective party who later effects the transfer or sale.

[*N.J.S.A.* 25:1–16(d).]

We conclude that these sections are intended to be read together, since (d) is an exception to (b). Although subsection (b) states that the exclusion for mortgage sales is an exception to "this subsection," this does not mean that the requirements of subsection (d) apply to commissions on sales of mortgages. Subsection (d) was written only to permit a limited exception to the writing requirement created by subsection (b), and not to create a new and separate requirement applicable to brokers' commissions not covered by subsection (b).

Our construction is supported by the legislative history of the statute, which was adopted based on "a recommendation of the Law Revision Commission." Senate Judiciary Committee, *Statement to Assembly No. 1550* at 4 (Feb. 8, 1996). The Report of the Law Revision Commission indicated that mortgage brokers were to be excluded from the statute:

The only limitation to the inclusiveness of the proposed statute is the exception for interests of a mortgagee or lienor. The Commission intends to exclude mortgage brokers from the requirements of the statute.

[New Jersey Law Revision Commission, *Report and Recommendations Relating to Writing Requirements For Real Estate Transactions, Brokerage Agreements and Suretyship Agreements,* December, 1991, page 21.]

Consequently, we agree with plaintiff that the commission agreement was not subject to the Statute of Frauds.

Affirmed.